### M. & J. TRACY, Inc., v. MARKS LISSBERGER & SON, Inc.

(District Court, E. D. New York. November 15, 1920.)

1. **Wharves ☞20(6)—Consignee held liable for injury at public dock.**

   A consignee, who directed the barge to be sent for unloading to a public dock, where it was known it would ground at low water, is liable to the barge owner for injuries caused by a rock in the bottom at that berth; the consignee's remedy, if any, being against the municipality in control of the dock.

2. **Wharves ☞20(3)—Consignee must give warning of necessity to breast out vessel at dock.**

   Where the consignee directed a barge to be sent to a public dock for unloading, and it appeared that, under some circumstances, but not always, it was necessary to breast out vessels from the dock, the consignee is liable for injuries from a defective condition of the berth, where he did not give warning of the necessity for breasting out under the conditions, though he would not have been liable if that was necessary under all conditions and the master of the barge was familiar with the dock.

In Admiralty. Libel by M. & J. Tracy, Incorporated, against Marks Lissberger & Son, Incorporated. Decree rendered for libelant.

Foley & Martin and W. J. Martin, all of New York City, for libelant.

White & Case and Allen McCarty, all of New York City, for respondent.

CHATFIELD, District Judge. The testimony shows that the barge Albany sank opposite to the northerly end of West street, in Long Island City. West street runs out to the south side of the slip or body of water known as the Standard Oil creek. The bulkhead at this street is used as a public slip and is maintained by the city, although practically every one who uses the berth has to encroach on the oil properties on either side of the street. It must be held from the testimony that the boat was in good condition and not leaking when she arrived there with a cargo of coal, which would give her a draft of some 6 or 7 feet. She arrived Thursday night, was reported some time that night or Friday, and on Friday afternoon was observed to be sinking. She stayed on the bottom until Monday, when her cargo of coal was taken off, and during that time was observed to lie at an angle, with her stern some 1½ or 2 feet higher than the bow, and in a position some 10 or 12 feet from the face of the bulkhead.

It is not necessary to go into the differences in the testimony, because

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the only witness for the respondent who had anything to do with the boat or her condition is manifestly confused in his recollection.

On Monday the boat was pumped out and her cargo removed, when she floated and stayed afloat until taken to a dry dock in Jersey City, where a boulder was found imbedded in her bottom, some 6 or 7 feet forward of the stern, and held in a break in three or four of the bottom planks. The boat was consigned to this public wharf by the respondent. If the wharf were a private wharf, maintained by the respondent, upon a similar showing of facts the libelant would be entitled to a decree, as there seems to have been no fault on the part of the captain of the vessel or of the libelant, and no sounding or test of the slip would have disclosed the particular boulder which caused the damage.

[1] According to the testimony the captain loosened the line, so she could rise and fall with the tide, and no instructions were given to breast the boat off any distance from the wharf, although the stevedores who unload customarily in that place testify that they ordinarily breast off vessels to avoid their being injured at low tide. Under such circumstances the consignee would be responsible, if the condition of the berth is within his control. When the consignee depends upon an independent contractor to furnish a berth for him, or when he uses a public dock, the duty rests upon the consignee to see that proper warning is given as to the way in which the berth should be used, if the consignee has been in the habit of using that particular berth, so as to be familiar with its general condition. That would seem to be the situation in this case. But in addition, if the consignee was not bound to give warning, or to take any particular care of the boat at the dock, then his reliance upon the maintenance of the public berth by the city is the reason why he goes to no trouble himself and assumes that the berth is safe. Under these circumstances he is responsible for the care of the vessel which is placed by him in the berth, and he in turn must look to the parties maintaining the public berth for which he pays hire, if they do not furnish him with a safe berth.

The libelant cannot be compelled to look to any one except his consignee, where an accident occurs through an obstruction the presence of which could have been discovered by ordinary care, or what would be reasonable care in maintaining a safe berth. This is not the case of a temporary or floating obstacle, for which no one could be held responsible or shown to have failed to take reasonable notice of its existence. The consignee is primarily liable, and whether or not he can relieve his responsibility by bringing in any other party does not affect the right of the libelant to recover. On the testimony the libelant should have a decree, and the amount of damage should be determined on a reference.

Mr. McCarty: May I call your attention to just one thing, for such consideration as you desire to give it, in view of the turn your opinion has taken; that is, the uncontradicted testimony of Mr. Sievern, a stevedore of long experience in those waters, to the effect that he on numerous occasions had unloaded boats that belonged to the

libelant at this very dock, indicated a. certain amount of knowledge and familiarity with the conditions there on the part of the libelant?

[2] The Court: I referred to that because I conceived of a situation where the responsibility for not breasting a boat in a place where every one knows they have to take bottom might rest upon the captain. Where both the consignee and the captain, or the employers of the captain, know that the boat has to be breasted out, or has to lie on the bottom, and they take the risk of letting her lie on the bottom, the necessity of giving warning to breast the boat out may be removed. We frequently have cases where the question turns upon whether the captain did properly breast out his boat, everybody assuming that that is what he should do. But I do not think the evidence in this case shows just that kind of a situation. Here was a berth that according to the testimony was used both ways, and it would depend upon the draft of the vessel, the character of its cargo, the conditions under which the boat went there, whether it was the duty of the captain to breast out, or whether it was the duty of the consignee—that is, the person maintaining the slip—to obtain sufficient information as to whether breasting out was necessary.

I do not think the testimony in this case goes so far as to show that either the libelant or the libelant's captain was informed of the nature of this berth as to any danger, from which the responsibility rested upon them to breast the boat out in any event. That question of law depends on the facts of the case, as I see it. I do not think in this case that the captain was called upon to do it. If the case was different, and such testimony had been put in, I anticipate that that might be the issue in the case; but I think it has been removed by the testimony here, so that I do not view the case in that light.